United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NIBIRUTECH LTD,

    Plaintiff,

    v.

ANDREW JANG, et al.,

    Defendants.

_____/

No. C 14-3091 PJH

**ORDER DENYING MOTION TO DISMISS**

    Defendants' motion to dismiss the above-entitled action came on for hearing before this court on November 12, 2014. Plaintiff appeared by its counsel Sophia Jiang, Howard Rockman, and Christopher Aguilar; and defendants appeared by their counsel Michael Lee. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby DENIES the motion as follows.

## BACKGROUND

    Plaintiff NibiruTech Ltd. ("NibiruTech"), a Chinese company located in Chengdu, Sichuan Province, People's Republic of China ("PRC"), develops and builds mobile video games based on Android and iOS operating systems.

    Defendants Andrew Jang and Maggie Jang both reside in California, and defendant HJClan, Inc. ("HJClan") is a California corporation with its principal place of business in Millbrae, California. NibiruTech alleges that HJClan is "owned" by Maggie Jang.

At some point in 2011 or 2012, NibiruTech hired Andrew Jang, a United States citizen, to serve as its marketing director in China. When he was hired by NibiruTech, Andrew Jang was enrolled in (or had just completed) an MBA program at a Chinese university.

NibiruTech alleges that Andrew Jang was authorized to select and hire third-party vendors on behalf of NibiruTech, and that he conspired with Maggie Jang to create fictitious invoices and to cause NibiruTech to issue checks to HJClan. NibiruTech asserts that Andrew Jang caused some $818,833 to be unlawfully diverted to HJClan – money that NibiruTech had intended for its third-party vendors and service providers in the United States and Europe.

NibiruTech filed the complaint in this action on July 8, 2014, asserting four causes of action – breach of fiduciary duty (against Andrew Jang), fraud (against Andrew Jang and Maggie Jang), civil conspiracy (against all three defendants), and conversion (against all three defendants). NibiruTech seeks recovery of the $813,833, plus $5 million in punitive damages.

Defendants now seek an order dismissing the complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue, or in the alternative, dismissing the complaint for forum non conveniens.

**DISCUSSION**

A.  Legal Standard

Rule 12(b)(3) and 28 U.S.C. § 1406(a) allow for dismissal when venue is "wrong" or "improper." Atlantic Marine Constr. Co. v. United States Dist. Court, 134 S.Ct. 568, 577 (2013). Whether venue is "wrong" or "improper" depends on whether the court in which the case was brought satisfies the requirements of federal venue laws; the existence of a forum selection clause does not render venue in a court "wrong" or "improper" under those rules. Id. at 578-79.

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." Id. at 580. If dismissal

2

under forum non conveniens is appropriate, the court need not address other grounds for dismissal. See Fine v. Cambridge Int'l Sys., __ Fed. Appx. __, 2014 WL 4214416 at *__ (9th Cir. Aug. 27, 2014) (citing Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 425 (2007)). In general, "[a] district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142 (9th Cir. 2001) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504 (1947)). Once a district court determines that the appropriate forum is located in a foreign country, the court may dismiss the case. Cheng v. Boeing Co., 708 F.2d 1406, 1409 (9th Cir. 1983).

Before dismissing an action based on forum non conveniens, district courts analyze whether an adequate alternative forum exists, and whether the balance of private and public interest factors favors dismissal. Lueck, 236 F.3d at 1142; see also Gutierrez v. Advanced Medical Optics, Inc., 640 F.3d 1025, 1029 (9th Cir. 2011).

The "private interest" factors include the plaintiff's choice of forum, the residence of the parties and witnesses, the ease of access to evidence, the availability of compulsory process, and the cost of transporting witnesses. See Boston Telecom. Group, Inc. v. Wood, 588 F.3d 1201, 1206-07 (9th Cir. 2009). The "public interest" factors include court congestion, imposition of jury duty on the community, local interest in resolving the controversy, the interest in having a diversity case decided in the forum familiar with the relevant law, and avoiding conflicts of law problems. See Gemini Capital Group v. Yap Fishing Corp., 150 F.3d 1088, 1094 (9th Cir. 1998).

B.  Defendants' Motion

Defendants argue that the case should be dismissed pursuant to Rule 12(b)(3) for improper venue based on the forum-selection clause in Andrew Jang's employment agreement. In the alternative, they assert that the case should be dismissed under the doctrine of forum non conveniens.

In Atlantic Marine, the Supreme Court held that a party may not enforce a forum-selection agreement under 28 U.S.C. § 1406(a) or Federal Rule of Civil Procedure 12(b)(3),

3

because the agreement to that forum means the forum is not improper. Where the proposed forum is another federal court, the appropriate mechanism is a motion to transfer under the doctrine of forum non conveniens, ordinarily analyzed under the factors applicable to a motion to transfer under 28 U.S.C. § 1404(a). Id., 134 S.Ct. at 580. Where the proposed alternative forum is another country, the court's discretion under the doctrine of forum non conveniens is limited to staying or dismissing the action. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253-54 (1981); see also Atlantic Marine, 134 S.Ct. at 580; Sinochem, 549 U.S. at 430.

      The primary difference between a motion to dismiss based on a forum selection clause and a motion to dismiss based solely on the doctrine of forum non conveniens is that where the motion is based on a forum-selection clause, Atlantic Marine holds that the court cannot consider the "private interest" factors such as the plaintiff's choice of forum and the convenience of parties and witnesses. See id., 134 S.Ct. at 580-82. By contrast, in the standard forum non conveniens analysis, the court is required to consider both the "private interest" factors and the "public interest" factors.

      Here, defendants contend that the case should be dismissed based on the forum-selection clause in Andrew Jang's employment agreement. However, in addition to incorrectly arguing that the motion is governed by Rule 12(b)(3), they have not met their burden of showing that the forum-selection clause supports dismissal. They simply assert in a conclusory, one-paragraph argument, that the parties' forum selection clause is sufficiently broad to cover all "disputes," without any limitation as to specific types of disputes; that it is also sufficiently broad to apply to all the defendants (none of whom "object to being governed by the forum-selection clause") and "whose alleged conduct is so closely related to the contractual relationship that the forum selection clause should apply to all of them."

      A copy of the employment agreement is attached to the complaint. The agreement is written in Chinese, with what purport to be English translations of each provision. The forum selection clause appears in Article 10, and the purported translation on the face of

4

the contract states as follows:

> Controversy – During the valid period of this contract, both parties shall discuss to resolve it in the first place. If both parties are unable to reach an agreement, any of the parties has the right to ask for arbitration within one year after the controversy happens. Arbitration location: Chengdu China.

Defendants assert, however, that as translated by their "legal expert," Professor Anna M. Han, Article 10 of the employment agreement should more properly read in English as follows:

> If there is a dispute, both parties shall negotiate. If negotiation fails, then the disputing party or both parties may initiate arbitration within one year from the date of the dispute with the Labor Arbitration Commission. If either party is dissatisfied with the arbitration decision, that party may appeal the decision within 15 days of the award to the People's court. The dispute location shall be Chengdu.

Declaration of Anna M. Han in support of motion to dismiss ("Han Decl.") ¶ 12. Professor Han, who states that she was engaged by defendants to render an expert opinion "on the issue of China as an adequate alternative forum in a motion to dismiss for forum non conveniens," states in her declaration that she is a member of the California Bar, was born in Taiwan and is fluent in Chinese, and is familiar with Chinese law. Han Decl. ¶¶ 1, 3-7.

In opposition, NibiruTech argues that the forum selection clause does not apply because it does not bind the claims alleged in the complaint, and because the employment agreement does not mandate the location of the dispute resolution. Specifically, NibiruTech contends that the English translation on the face of the employment agreement is the applicable version, and, under that translation, the provision does not specify the definition or scope of the controversy, much less state or suggest that the clause covers "all disputes regardless of their nature" as defendants claim.

Moreover, NibiruTech argues, the clause covers only disputes arising under the employment agreement – not the type of claims raised in the current lawsuit – and does not mandate arbitration or the location of any arbitration. NibiruTech asserts that at most, the forum-selection clause merely encourages the parties to resolve labor disputes through arbitration, as it provide that "the parties may initiate arbitration." Only if the parties opt for arbitration will the location be Chengdu.

The court finds that the motion to dismiss based on the forum-selection clause must be DENIED. Both sides seem unaware of the proper standard to be applied in such a motion, where the forum-selection clause designates a foreign forum. Neither side cites Atlantic Marine, and defendants' sole argument in their reply is that Professor Han has provided expert opinions, including an interpretation of the arbitration provision, and an opinion that the Labor Arbitration Commission would have accepted this case because the allegations all relate to Andrew Jang's employment with NibiruTech.

In addition, defendants do not adequately respond to NibiruTech's arguments regarding the validity of the forum-selection clause – whether it is mandatory, whether it requires arbitration in Chengdu, and whether it covers all defendants and all the claims. The court is not persuaded that a forum-selection clause in an employment agreement between Andrew Jang and NibiruTech would apply to a dispute between all three defendants and NibiruTech. Because of these questions regarding the applicability of the forum-selection clause, and in view of the English-translation issues noted above, the court finds that defendants have not met their burden as to this part of the motion.

Defendants' alternative argument is that the case should be dismissed based on the doctrine of forum non conveniens. "Forum non conveniens is a common law doctrine that allows a court having jurisdiction over the subject matter and the parties to decline to exercise its jurisdiction where litigation in the forum would be seriously inconvenient for one of the parties, and a more convenient forum is available elsewhere." Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2014 ed.) § 4:835; see also Sinochem, 549 U.S. at 429; American Dredging Co. v. Miller, 510 U.S. 443, 453 (1994).

Forum non conveniens is "an exceptional tool to be employed sparingly," and not a "doctrine that compels plaintiffs to choose the optimal forum for their claim." Dole Food Co. v. Watts, 303 F.3d 1104, 1118 (9th Cir. 2002) (citation and quotations omitted). The fact that a case involves conduct or plaintiffs from overseas is not in itself sufficient to support dismissal. See Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1224 (9th Cir. 2011). To prevail on a motion to dismiss based upon forum non conveniens, a defendant

6

bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal. Id.; Dole Food Co., 303 F.3d at 1118.

Defendants assert that China is an adequate alternative forum. An alternative forum is deemed adequate if the defendants are amenable to process there, and the other jurisdiction offers a satisfactory remedy. See Piper, 454 U.S. at 254 n.22; see also Carijano, 643 F.3d at 1225; Dole Food, 303 F.3d at 1118. The requirement that the alternative forum offer some remedy for a plaintiff's harm is "easy to pass; typically, a forum will be inadequate only where the remedy provided is 'so clearly inadequate or unsatisfactory, that it is no remedy at all.'" Carijano, 643 F.3d at 1225-26 (citing Tuazon, 433 F.3d at 1178); see also Neuralstem, Inc. v. ReNeuron, Ltd., 365 F. App'x 770, 771 (9th Cir. 2010) (citing Lueck 236 F.3d at 1143-44).

The court must also consider "[t]he foreign court's jurisdiction over the case and competency to decide the legal questions involved." Leetsch v. Freedman, 260 F.3d 1100, 1103 (9th Cir. 2001) (citing Cheng, 708 F.2d at 1410). The court makes the determination of adequacy on a case-by-case basis, with the party moving for dismissal bearing the burden of proof. Id.

Defendants assert that China is an adequate alternative forum. They support their argument entirely by citation to the Han Declaration. Professor Han states that in her opinion, the PRC is an adequate alternative forum, that "China has a court system that has been in place for decades," and that "[t]here is an established court system with a profession [sic] judiciary." Han Decl. ¶¶ 9-10. She asserts that "[t]he Chinese court would be able to serve all of the defendants in the United States [and] [o]nce served, the Chinese court would have jurisdiction over all defendants named in this case and adjudicate the claims specified in [NibiruTech's] complaint." Id. ¶ 10.

She adds that China has a "Civil Procedure Code," a "contract law and a tort law" as well as "Labor Law and Labor Contract Law which govern employment relationships in China and may be applicable to this case." Id. Finally, she asserts that if NibiruTech is "successful," it can seek "monetary damages" in China, stating that "the courts routinely

award such damages to the winning claimant." Id.

Defendants argue in addition that the private and public interest factors weigh in favor of China. First, with regard to "private interest" factors, defendants contend that the vast majority of relevant evidence, witnesses, and documents are located in China. They assert that apart from the defendants (Andrew Jang, Maggie Jang, and HJClan) none of the key witnesses described in the Andrew Jang declaration resides in California. Defendants also deny the authenticity and accuracy of parts of the documents that are attached to NibiruTech's complaint and assert that because these documents reflect directly on the veracity of NibiruTech's principal evidence, defendants will need to obtain all the underlying and related documents, which are all presumably located in China.

With regard to the availability of compulsory process for the attendance of unwilling witnesses, and the costs of obtaining attendance of those witnesses, defendants argue that since all the key witnesses with information material to the defendants' defense are located in China, it would be inordinately more convenient for the witnesses and parties if this case were tried in China. These key witnesses are all current or former employees of NibiruTech, but are not officers or high-level employees. Thus, defendants assert, they cannot be compelled to testify in California. They also contend that travel between China and the U.S. is expensive, as is the hiring of proficient Chinese language interpreters.

Defendants assert that the "public interest" factors also favor dismissal. With regard to administrative difficulties flowing from court congestion, defendants contend that the need to utilize Chinese language interpreters for almost all the key witnesses, and the need to translate the voluminous Chinese documents, can only add to the court's "well-known heavy calendar demands."

With regard to local interest in having local controversies decided at home, and unfairness of burdening citizens in unrelated forum with jury duty, defendants argue that China has a strong interest in this litigation, as most of the alleged wrongful acts are alleged to have taken place in China, where NibiruTech is located. They argue that any American interest in the outcome of this dispute would be limited, and simply not sufficient

8

to burden the California jurors with the extended trial this case would necessitate or to justify the burden on judicial resources.

With regard to local interest in having a trial of a diversity case in a forum that is at home with the law that governs the action, and with regard to avoidance of unnecessary problems in conflict of laws, defendants cite again to the declaration of Professor Han. She opines that since the employment relationship arose in China and the alleged breaches occurred in China, Chinese law would apply. Han Decl. ¶ 11.

Defendants cite Lueck for the proposition that before a district court can dismiss for forum non conveniens, it must "first make a choice of law determination." Lueck, 236 F.3d at 1148. However, Lueck went on to say that "the choice of law analysis is only determinative when the case involves a United States statute requiring venue in the United States, such as the Jones Act or the Federal Employers' Liability Act." Id. Here, the claims asserted in the complaint are all common law tort claims, and thus no choice of law inquiry is required.

In opposition, NibiruTech argues that China is not a viable alternative forum, and the balance of interests weighs against a dismissal. As indicated above, to show an adequate alternative forum, defendants must show that they are amenable to service of process in the foreign jurisdiction, and that the entire case and all parties can come within the jurisdiction of that forum. Piper, 454 U.S. at 254 n.22; Dole Food, 303 F.3d at 1118; Lueck, 236 F.3d at 1143. Here, while defendants suggest they are amenable to service of process and have consented to jurisdiction in China, there is no evidence that they have actually done so.

NibiruTech contends that the case cannot be dismissed under forum non conveniens because the alternative – a Chinese court – would lack personal jurisdiction over defendants. NibiruTech cites to brief excerpts from four pages of a law review article regarding the Civil Procedure Law of the PRC (full text not provided). According to NibiruTech's account, this article states that under the Chinese Civil Procedure Law, the factors determining "territorial jurisdiction" are "domicile, place of business, conduct,

9

location of property, and party consent." Territorial jurisdiction can be further divided into "general" jurisdiction, "specific" jurisdiction, "consensual" jurisdiction, and "exclusive" jurisdiction based on these factors. NibiruTech asserts that jurisdiction does not exist in China under any of these factors.

NibiruTech contends that none of the defendants is a citizen of the PRC, and none is domiciled there or conducts business there; that the subject matter of the claim is based on events that occurred in California (where the money was wired to HJClan, and from where at least part of the third-party vendors' invoices were paid); that the Chinese court would not have "consensual" jurisdiction because none of the defendants has consented in writing to being sued in a specific Chinese court with actual connection to the dispute; and that a Chinese court would not have "exclusive" jurisdiction, as it does not involve a dispute over real estate, harbor operations, or a dispute regarding "succession."

NibiruTech emphasizes that no defendant has agreed to submit to personal jurisdiction and appear in a Chinese court; and that defendants have never attempted to resolve this matter in a Chinese court, and have never expressed any interest in coming to China to resolve the subject legal dispute. NibiruTech argues that an alternative forum is available only when all defendants can be sued in that forum, but that here, even if Andrew Jang has sufficient contacts (based on his employment in China), Maggie Jang and HJClan both lack the minimum contacts with China for purposes of this case.

Finally, NibiruTech argues that a Chinese court would not be able to provide a "practical remedy," as none of the defendants own any property or attachable assets in China, and any judgment against them would not be enforceable in China. For this reason, NibiruTech contends that it would be unable, even if successful, to collect a damages award.

With regard to the balance of private and public interests, NibiruTech asserts, with regard to "private" interests that its claims can be proven by formal business records from HJClan to NibiruTech, bank wire transfer records, and corresponding invoices from third-part vendors. It claims that its evidence is already in the possession of its attorneys, and

that all the invoices are in English already and would not need to be translated. Thus, NibiruTech asserts, litigating this case in China would actually necessitate more translation (English to Chinese) than litigating in California. NibiruTech also contends that defendants have relevant documents themselves – such as communications among the defendants – but that those documents would be out of reach of a Chinese court, since all defendants reside in California.

As for witnesses, NibiruTech asserts that both sides have witnesses, some in China and some in the U.S., but that most of the ten Chinese witnesses identified in the Andrew Jang declaration do not possess the knowledge he attributes to them. In support, NibiruTech has provided declarations from six of the ten (whom defendants assert are all current NibiruTech employees), and all deny knowledge of the relationship between Andrew Jang and HJClan during the time Jang was employed at NibiruTech. NibiruTech does not address any of the other "private" interest factors.

With regard to the "public" interest, NibiruTech argues that this case does not involve a personal injury that took place in a foreign country, or a dispute regarding a multi-national company having business in China. Rather, it is a dispute involving two individual defendants, both citizens of the U.S. and domiciled in California, and a corporation incorporated and having its principal place of business (and sole office) in California, with the wrong occurring primarily in California (where the money was wired). NibiruTech asserts that California has an interest in preventing fraud from occurring within its borders, and that because the alleged wrong was committed by California residents, at least partly within California, the public interest factors favor allowing the case to proceed because of the significant connection to the State. NibiruTech also notes that defendants have provided no information regarding relative court congestion.

Finally, NibiruTech argues that if the court decides that China is an adequate alternative forum, it should stay the case and impose conditions on defendants, in line with the conditions imposed by the California Supreme Court in Stangvik v. Shiley, 54 Cal. 3d 744, 750-52 & n.2 (1991). In line with this, NibiruTech requests, in the alternative, that

11

rather than dismissing the case, the court retain jurisdiction over this case and impose a number of conditions.

The conditions proposed by NibiruTech include a requirement that all three defendants consent in writing to the jurisdiction of the Chinese courts; that they agree they will personally appear in the Chinese court that has jurisdiction over the proceedings; that they agree to comply with all discovery orders of the Chinese court, to make all past and present employees of HJClan available to testify at defendants' costs, and to make documents in defendants' possession in the United States available for inspection in China; that they agree to an order freezing all defendants' bank accounts; and that they agree to pay any final judgments rendered in the Chinese actions.

With their reply, defendants have provided a supplemental declaration by Professor Han, which includes additional argument not included with the original declaration, and which relies on excerpts of the same law review article cited by NibiruTech. Based on this supplemental declaration, defendants reiterate that Chinese courts will have personal jurisdiction over the defendants under China's Civil Procedure Law. See Han Reply Decl. ¶ 9. Defendants also contend that China's Civil Procedure Law provides for the service of defendants outside of China if they do not have a domicile in China through which Chinese courts can obtain jurisdiction over the defendants; and that once served, even if the defendants do not appear, the Chinese court "could proceed to render judgment" and "could then seek enforcement of its judgment where the defendants have assets." See id.

In further reliance on the supplemental declaration, defendants assert that documents in both English and Chinese "can often be badly translated" and that the employment agreement between Andrew Jang and NibiruTech is an example of such a document. See id. ¶ 12. Thus, defendants contend, translation by certified translators would be needed.

Defendants also argue that the Chinese courts have a greater interest in the case based on the parties' "photoshopping of documents in order to circumvent Chinese foreign exchange rules" – which they argue can be best understood by a Chinese court; that a

12

1  Chinese court would have an equal if not greater interest in seeing fraud not occur within its
2  territory and against its own "nationals;" that Chinese courts have a strong public interest in
3  seeing that remedies are available in China and applying Chinese law to this case; that
4  given that the employment agreement was entered into in China, and that the employment
5  relationship occurred in China, and that the alleged fraud was committed in China, the
6  Chinese courts "could apply Chinese law and have a strong public interest in the case [and]
7  Chinese judges would be fully qualified to apply their own laws." See id.
8  ¶¶ 9, 12-14. Defendants argue that because NibiruTech has provided no expert of its own
9  on the issue of an adequate alternative forum, this court should "adopt" Professor Han's
10 opinion that China will provide an adequate alternative forum.

11       Finally, defendants assert that the private and public interest factors favor dismissing
12 this case for forum non conveniens. The only factor they actually address is the access to
13 live witness testimony, which they assert is the most important factor. However, if this case
14 proceeds in this court, defendants contend, they will either not be able to get all the
15 witnesses to travel here from China for discovery and trial (or the witnesses will not be able
16 to get visas), or will have to spend huge amounts of money to transport them here and
17 house and feed them. They argue that in a fraud case, it is vitally important that there be
18 live witness testimony. They assert that the declarations provided by NibiruTech are from
19 current employees, who naturally are going to deny that they were aware that Jang was
20 acting with NibiruTech's knowledge. They claim that other witnesses are former employees,
21 who have a different story to tell.

22       As for NibiruTech's proposal that the court impose a stay with conditions, defendants
23 argue that the list of conditions proposed by NibiruTech can be warranted only by
24 NibiruTech's unsupported assertions that (a) that Andrew Jang "fled" China after he
25 resigned from NibiruTech, (b) that none of the defendants will ever go to China again, (c)
26 that Maggie Jang has no contact with China, (d) that Andrew Jang never provided any
27 contact information or an address where he could be located or served with process in
28 China, or (e) that Maggie Jang has never been to China, or at least not during the relevant

13

period of the current action.

Defendants argue that these assertions are incorrect, as both Andrew Jang and Maggie Jang have been to China multiple times in the past few years and currently have visas allowing them to enter China; that after Andrew Jang resigned from NibiruTech he went to work for another game designer 10 minutes away from NibiruTech's offices; that after he resigned, NibiruTech employees continued to contact him without difficulty, and he continued to live in the same apartment; and that he returned to the U.S. only because his new employer wanted to develop a U.S. presence in the mobile game industry.

The court finds that the motion must be DENIED. China has a court system where this dispute could – and probably should – be adjudicated. However, in order to establish that China is an "adequate" alternative forum in this case, defendants must establish that a Chinese court has personal jurisdiction over all of them and, more importantly, that all three defendants will submit themselves to the jurisdiction of the Chinese court or can be compelled to do so. They must also show that China offers a satisfactory remedy and that they can be bound by a judgment issued there. The court finds that defendants have not met their burden of showing an adequate alternative forum.

Clearly, defendants have not stated unequivocally that they are amenable to appearing in a Chinese court case. They claim that Andrew Jang and Maggie Jang frequently travel to China, and have current visas for travel to China. However, that is not the same as agreeing to the jurisdiction of a Chinese court. Moreover, defendants make no mention of HJClan and whether it "travels" to China or has any presence there.

Apart from this, the private and public interest factors on balance favor dismissal for forum non conveniens. China is a more convenient forum for NibiruTech. There appears to be little access to proof in California, apart from any documents defendants might have in their possession. Key witnesses and documents are located in China, and it would be prohibitively expensive to bring all the witnesses to California.

The one private interest factor that defendants did not address is the plaintiff's choice of forum, which to some degree favors NibiruTech. There is a strong presumption in

favor of the plaintiff's chosen forum and ordinarily the defendant must make a strong showing of the necessity of transfer (or dismissal). Boston Telecom., 588 F.3d at 1206; see also Neuralstem, Inc. v. ReNeuron, Ltd., 365 F. App'x 770, 771-72 (9th Cir. 2010). When the plaintiff has filed in its home forum, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable, and a foreign plaintiff's forum choice is given less deference. Piper, 454 U.S. at 255-56.

The "public interest" factors all favor dismissal. There is relatively little local interest in California in a dispute relating to events involving a Chinese company and one of its employees in China. NibiruTech claims that the fraud occurred in California, the place where HJClan is located (and the location to which the money was wired). However, the Chinese courts have a significantly greater interest in resolving an employment dispute arising out of employment, in China, by a Chinese company. In addition, to the extent that the parties manipulated the invoices to evade Chinese currency restrictions, that is not an issue that involves California or that a California jury would have any interest in deciding. California's primary interest lies in the fact that the two individual defendants are citizens of California, and the third defendant is a California corporation.

The burden on California courts and juries would arguably be greater than the burden on Chinese courts and juries (assuming Chinese courts have juries), as interpreters would be required for most aspects of the case in California. However, the Chinese court would be more competent to hear NibiruTech's claim because of its familiarity with Chinese language and Chinese law.

**CONCLUSION**

Because defendants have failed to establish the existence of an adequate alternative forum, the motion to dismiss is DENIED. Although defendants have shown that the public and private factors favor dismissal for forum non conveniens, they have not established that a Chinese court is an adequate alternative forum, primarily because they have not clearly shown that there is personal jurisdiction over <u>all</u> defendants. The result

15

might be different should all defendants agree in writing to submit to the jurisdiction of an appropriate Chinese court and to be bound by its judgment.

**IT IS SO ORDERED.**

Dated: December 2, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge