**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NIBIRUTECH LTD,

        Plaintiff,

        v.

ANDREW JANG, et al.,

        Defendants.
_____/

No. C 14-3091 PJH

**ORDER GRANTING MOTION TO
DISMISS FOR FORUM NON
CONVENIENS**

    Before the court is defendants' renewed motion for an order dismissing the above-entitled action for forum non conveniens.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion.

**BACKGROUND**

    Plaintiff NibiruTech Ltd. ("NibiruTech") is a Chinese company located in Chengdu, Sichuan Province, People's Republic of China ("PRC").  NibiruTech, which was founded in 2008, develops and builds mobile video games based on Android and iOS operating systems.  Cplt ¶ 1.

    Defendants Andrew Jang and Maggie Jang reside in California, and defendant HJClan, Inc. ("HJClan") is a California corporation with its principal place of business in Millbrae, California.  NibiruTech alleges that HJClan is "owned" by Maggie Jang.  Cplt ¶ 2.  Starting at some point in 2011, Andrew Jang, a United States citizen, was hired to serve as NibiruTech's marketing director in China.  At that time, Andrew Jang was enrolled in (or had just completed) an MBA program at a Chinese university.  Cplt ¶ 12.

    NibiruTech alleges that Andrew Jang was authorized to select and hire third-party vendors on behalf of NibiruTech, and that from October 2012 until October 2013, while he

United States District Court
For the Northern District of California

1  was employed at NibiruTech, he conspired with Maggie Jang to create fictitious invoices

2  and to cause NibiruTech to issue checks to HJClan.  Cplt ¶¶ 2, 18.  NibiruTech asserts that

3  Andrew Jang caused some $813,833 to be unlawfully diverted to HJClan – money that

4  NibiruTech had intended for its third-party vendors and service providers in the United

5  States and Europe.  Cplt ¶¶ 20-24.

6       Defendants' position is that the fictitious invoices and supporting e-mails were openly

7  created at NibiruTech, with full knowledge and approval of NibiruTech's top management.

8  They claim that the fictitious invoices and e-mails were necessary to bypass Chinese

9  government regulations and reporting requirements, and restrictions on the level of activity

10  in NibiruTech's bank accounts and NibiruTech's payment to entities outside China.

11  Defendants also assert that HJClan never deliberately failed or refused to pay NibiruTech's

12  third-party vendors the full amounts that were owed to them by NibiruTech as invoiced by

13  the third-party vendors.

14       NibiruTech filed the complaint in this action on July 8, 2014, asserting claims of

15  breach of fiduciary duty (against Andrew Jang), fraud (against Andrew Jang and Maggie

16  Jang), civil conspiracy (against all three defendants), and conversion (against all three

17  defendants).  NibiruTech seeks recovery of the allegedly misappropriated $813,833, plus

18  $5 million in punitive damages.

19       Defendants moved for an order dismissing the complaint for improper venue (based

20  on a purported forum-selection clause in Andrew Jang's employment agreement with

21  NibiruTech) or for forum non conveniens.  On December 2, 2014, the court issued an order

22  denying the motions.  With regard to the motion to dismiss for forum non conveniens, the

23  court found that while the relevant factors appeared to favor dismissal so that the case

24  could be filed and heard in China, defendants had not established that China was an

25  "available alternative forum" because they had not shown that there was personal

26  jurisdiction over all defendants in China.  The court added that "[t]he result might be

27  different should all defendants agree in writing to submit to the jurisdiction of an appropriate

28  Chinese court and to be bound by its judgment."

United States District Court
For the Northern District of California

1    On December 11, 2014, defendants filed a statement indicating that they agreed to

2    "submit to the jurisdiction of an appropriate Chinese court, and to be bound by its

3    judgment, subject only to the caveat that [they] would reserve the right to seek judicial

4    review of any failure by the Chinese court to abide by its procedural and legal

5    requirements."

6    Defendants subsequently filed an answer to the complaint, as well as the present

7    motion to dismiss for forum non conveniens.

8                                          **DISCUSSION**

9    A.    Legal Standard

10    In general, "[a] district court has discretion to decline to exercise jurisdiction in a

11    case where litigation in a foreign forum would be more convenient for the parties." Lueck v.

12    Sundstrand Corp., 236 F.3d 1137, 1142 (9th Cir. 2001) (citing Gulf Oil Corp. v. Gilbert, 330

13    U.S. 501, 504 (1947)). Once a district court determines that the appropriate forum is

14    located in a foreign country, the court may dismiss the case. Cheng v. Boeing Co., 708

15    F.2d 1406, 1409 (9th Cir. 1983).

16    Before dismissing an action based on forum non conveniens, district courts analyze

17    whether an adequate alternative forum exists, and whether the balance of private and

18    public interest factors favors dismissal. Lueck, 236 F.3d at 1142; see also Gutierrez v.

19    Advanced Medical Optics, Inc., 640 F.3d 1025, 1029 (9th Cir. 2011).

20    The "private interest" factors include the plaintiff's choice of forum, the residence of

21    the parties and witnesses, the ease of access to evidence, the availability of compulsory

22    process, and the cost of transporting witnesses. See Boston Telecom. Group, Inc. v.

23    Wood, 588 F.3d 1201, 1206-07 (9th Cir. 2009). The "public interest" factors include court

24    congestion, imposition of jury duty on the community, local interest in resolving the

25    controversy, the interest in having a diversity case decided in the forum familiar with the

26    relevant law, and avoiding conflicts of law problems. See Gemini Capital Group v. Yap

27    Fishing Corp., 150 F.3d 1088, 1094 (9th Cir. 1998). In Lueck, the court added that "[t]he

28    district court should look to any or all of the above factors which are relevant to the case

3

United States District Court

For the Northern District of California

1   before it, giving appropriate weight to each . . . in arriving at a balanced conclusion." Lueck,

2   236 F.3d at 1145-46.

3   B.      Defendants' Motion

4           Defendants argue that the complaint should be dismissed based on forum non

5   conveniens.  Defendants' motion is supported by declarations by Andrew Jang, Maggie

6   Jang, and defendants' "legal expert," Professor Anna M. Han.

7           Andrew Jang contends that he and other NibiruTech employees submitted invoices

8   for payment to third-party vendors, and that NibiruTech's CEO Xiangji Kevin Yang

9   authorized payment but only after scrutinizing the required documentation; that as part of

10  his duties at NibiruTech, he (Jang) participated with other employees in creating fictitious

11  invoices and matching supporting fictitious emails (including invoices to HJClan), with full

12  knowledge of NibiruTech's top management; that the fictitious invoices and emails were

13  created as part of an effort to evade government regulations; and that Yang made false

14  accusations against him, and orchestrated a campaign of misinformation about him.

15          In their motion, defendants argue that the case should be dismissed for forum non

16  conveniens because there is an adequate alternative forum available, and because the

17  balance of "private-interest" and "public-interest" factors favors litigating the dispute in

18  China rather than in the United States.  With regard to the availability of an adequate

19  alternative forum, defendants assert (relying on the report of their expert Professor Han)

20  that China has a court system in place where NibiruTech can file its claims with the local

21  Intermediate Court, and where the court can adjudicate NibiruTech's claims; that China has

22  a contract law and a tort law; that while the discovery process is different than in U.S.

23  courts, discovery is available; and that NibiruTech can seek monetary damages in China,

24  and courts routinely award such damages to the winning claimant.  Thus, they contend,

25  China provides an adequate alternative forum, given that they have shown that they are

26  "amenable to process" in China.

27          Defendants also argue that both the private-interest factors and the public-interest

28  factors weigh in favor of having this litigation heard in China.  With regard to the private-

**United States District Court**
For the Northern District of California

1    interest factors, Andrew Jang first lists ten witnesses in his declaration, nine of whom reside

2    in China and speak little or no English.  These witnesses are current or former NibiruTech

3    employees.  Jang describes the job duties of each, and discusses the information each

4    allegedly has with regard to NibiruTech's business and the matter of the third-party invoices

5    and payment documentation.

6          As for documents, defendants assert (again relying on the Jang declaration) that the

7    vast majority of key corporate records and documents that contain information material to

8    their defenses in this case (sales and marketing contracts, vendor reports and contracts,

9    invoices and supporting emails, marketing campaign documents, bank and other financial

10   documents, revenue and income reports, and financial statements) are primarily in the

11   Chinese language, and would need to be accurately translated into English for use in any

12   litigation in California.  Jang contends that many corporate records and documents are

13   maintained in the Finance section and in the Marketing section at NibiruTech's

14   headquarters in Chengdu.

15         With regard to the availability of compulsory process for the attendance of unwilling

16   witnesses, and the cost of obtaining attendance of willing witnesses, defendants argue that

17   because almost all the key witnesses are located in China, it would be significantly more

18   convenient for the witnesses and the parties if this action could be prepared for trial and

19   tried in China, rather than 7,000 miles away in California.  They also assert that all the key

20   witnesses are past or present employees of NibiruTech, and that neither the former

21   employees nor the current employees that are not high-level employees could be

22   compelled to testify in California; and in addition, that not many current or former

23   employees are likely to volunteer to testify.  They contend that because most of the

24   witnesses are beyond the reach of this court's compulsory process, they would have no

25   way of obtaining their testimony.

26         With regard to "other practical problems that make trial of a case easy, expeditious,

27   and inexpensive," defendants reiterate that wherever this case is litigated, the vast majority

28   of discovery will come from China, where most of the key witnesses and related documents

are located.  They assert that comparatively little discovery will come from witnesses or documents located in California, and that the lawyers for the parties would have to travel to China to take depositions of numerous key witnesses, and then would have to fly those key witnesses to California for the trial (assuming they could obtain visas), and feed and house them while they were here.  In addition, since most of the Chinese witnesses speak little if any English, the parties would also have to hire proficient, qualified Chinese language interpreters.  Defendants also contend that all of NibiruTech's documents are written in Chinese, and would have to be translated by official translators, which would be expensive and would add to the delay.

Defendants argue that the public-interest factors also favor dismissing this case. With regard to local interest in having localized controversies decided at home, and the unfairness of burdening citizens in an unrelated forum with jury duty, defendants contend that China has a strong interest in, and connection to, this litigation, as most of the allegations of wrongful actions involve actions taken in China while Andrew Jang was employed by NibiruTech, and any monetary damage or harm to NibiruTech would have occurred in China where it is located.  By comparison, they assert, any American interest in the outcome of this litigation would be limited and not sufficient to burden the citizens of California with jury services in "the extended trial this matter would necessitate."

With regard to administrative difficulties flowing from court congestion, defendants argue that the need to utilize Chinese interpreters for almost all the witnesses, and the need to translate all the voluminous Chinese documents, could be obviated if this case were dismissed and refiled in China.  They claim that not having to preside over this case will greatly unburden this court's calendar.

With regard to local interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, and the avoidance of unnecessary problems in conflict of laws or the application of foreign law, defendants' expert Professor Han states that given that the employment contract was entered in China, that the relationship of employer and employee occurred in China, and that the alleged fraud was

United States District Court
For the Northern District of California

committed in China, Chinese courts would apply Chinese law in the case.  Defendants also note that while the complaint alleges that Andrew Jang committed various acts and omissions – some in China and some in California – it does not allege facts showing that any other defendant committed any act or omission in California.  Under these circumstances, defendants speculate, this court might decide it was required to apply Chinese law.  Because of this potential entanglement between U.S. and Chinese law, defendants argue that this factor favors dismissal and refiling in China.

NibiruTech's opposition is supported by two declarations – a declaration by NibiruTech CEO Xiangji Kevin Yang, and an declaration by Lan Yan.  Both declarants state that they also provided declarations in support of NibiruTech's opposition to defendants' prior motion to dismiss for forum non conveniens, and both state that they "incorporate by reference" all statements made in those prior filings.  However, NibiruTech does not specify which portions of those prior declarations it wishes to have considered by the court. Additionally, Lan Yan, who states that she is in-house counsel for NibiruTech in China, provides a number of "opinions" in her declaration – e.g., that Andrew Jang engaged in criminal behavior, and that Andrew Jang is unlikely to return to China because he fears criminal prosecution.  She claims to have consulted with two Chinese law firms regarding Andrew Jang's civil and criminal liability, and attaches what she claims are their legal opinions (in Chinese, untranslated).  She purports to translate some excerpts from those opinions, but there is no evidence that she actually did the translating, that she is qualified to be a translator, that she accurately translated the documents, or that the documents are what they purport to be.

NibiruTech argues that defendants' agreement to submit to the jurisdiction of a court in China does not alter the fact that it would be substantially inconvenient for both NibiruTech and defendants to litigate the issues raised in NibiruTech's complaint in a Chinese court.  The reason, NibiruTech asserts, is that all the relevant activities of defendants that underlie the complaint occurred in the United States, and thus, all the relevant witnesses and documents are also in the United States.  This is essentially the

7

United States District Court

For the Northern District of California

1  same position NibiruTech took in its opposition to the prior motion to dismiss.

2        NibiruTech contends that neither the private-interest factors nor the public-interest

3  factors favor dismissal.  With regard to the private-interest factors, NibiruTech contends,

4  first, that the residence of the parties and "key witnesses" favors NibiruTech's choice of

5  forum.  Apart from Andrew Jang and Maggie Jang, NibiruTech identifies two individuals

6  whose names appear on emails transmitting invoices from HJClan to NibiruTech – Shobeir

7  Shobeiri, identified as Director of Business Development for HJClan, and Billy Shipp, who

8  had an email address at hjclan.com (suggesting an affiliation with HJClan).  Both these

9  individuals appear to be located in California, and also appear to have had some

10  involvement with a company called Iddiction, which is mentioned on some invoices

11  (possibly as a third party vendor).  NibiruTech describes the nature of the relationship

12  between HJClan and Iddiction as  "mysterious" and claims that the role of Shobeiri and

13  Shipp "may lead to additional controversies."

14        NibiruTech argues that China would not be a more convenient forum for either side,

15  given that Andrew Jang, Maggie Jang, Shobeir Shobeiri, and Billy Shipp are located in

16  California.  Of these, only Maggie Jang understands Chinese – the others would require

17  translators.  NibiruTech also asserts that "[t]here is no evidence" that Shipp or Shobeiri is a

18  high-level employee of HJClan, and thus, that there would be no way to compel their

19  attendance in China, and speculates that neither of them would voluntarily come forward,

20  because "their testimony might put their own interests at risk."  NibiruTech also contends

21  that the actual location of the evidence (whether testifying witnesses or documents) is not a

22  compelling consideration in view of the feasibility of videotaping depositions and electronic

23  communications.

24        NibiruTech contends that none of the present and former NibiruTech employees

25  listed by defendants as "key" witnesses can provide relevant information or testimony

26  regarding the claims asserted in the complaint, and that none of the documents maintained

27  by NibiruTech in China will have any bearing on the trial of those claims.  NibiruTech

28  argues that the fact that Andrew Jang was present in China during the time of the alleged

United States District Court

For the Northern District of California

1    fraud is irrelevant to the question of a convenient forum for the claims asserted in this

2    action, as is defendants' claim regarding invoices being "photoshopped" in China by

3    NibiruTech employees.  NibiruTech asserts that Andrew Jang knows many people at

4    NibiruTech from the time he spent working there, and claims that defendants' list of key

5    witnesses is "simply a strategy for the [d]efendants to distract the [c]ourt's attention from

6    the main issues of the case."

7         NibiruTech argues that this case involves only the activities of HJClan employees

8    preparing false invoices in California, <u>before</u> those invoices were presented to NibiruTech,

9    and HJClan receiving payment for those false invoices in California.  NibiruTech claims that

10   the sole proof that HJClan provided "services" to NibiruTech (as Andrew Jang contends) is

11   in the sole possession of HJClan, and is located in California, as are the personnel who

12   performed those services.

13        NibiruTech also asserts that the Chinese court procedure will not allow NibiruTech to

14   obtain any information about HJClan's business activities.  According to NibiruTech, the

15   courts in China generally have no provision for discovery, although the courts can order

16   preservation of evidence.  NibiruTech asserts that all communication between Andrew Jang

17   and HJClan took place via Andrew Jang's private email account, rather than his NibiruTech

18   e-mail account, and that "it must be concluded that email messages between HJClan and

19   Andrew Jang are accessible only through devices used by Andrew Jang and HJClan

20   according to court rules regarding the preservation of evidence."

21        NibiruTech argues that "[t]he cost of bringing witnesses to trial, enforceability of

22   judgment and all other practical problems that make trial of a case easy, expeditious and

23   inexpensive" favor retaining this case in this forum.  NibiruTech claims that it will be

24   expensive for "all the aforementioned key witnesses" to travel to China, and that because

25   those witnesses cannot speak Mandarin Chinese and the two countries have "significant

26   cultural differences in their legal systems," the defendants and third-party witnesses will

27   require skilled legal interpreters and capable lawyers who speak both English and

28   Mandarin fluently and understand both the applicable law of the United States and the law

United States District Court
For the Northern District of California

1   of China in order for the defendants and third-party witnesses to understand the court

2   proceedings and the charges against them, "which will be a very difficult task and the

3   process will be time consuming and expenditure inefficient."

4       With regard to the public-interest factors, NibiruTech argues that there is a strong

5   connection between California and the events alleged in the complaint, as the preparation

6   of the allegedly fraudulent invoices occurred there, and the payment was received there;

7   the defendants are all located in California, as is what NibiruTech refers to as "the

8   electronic documentary evidence presently located in Andrew Jang's electronic

9   communication devices."  NibiruTech asserts that "[t]here is a strong local interest in

10  California in having its citizens and corporations being brought to task for committing

11  fraudulent acts, and providing a forum for those who have been defrauded to seek

12  redress."  NibiruTech does not discuss the factor of the court's familiarity with the governing

13  law, or the burden on local courts and juries.

14      Finally, NibiruTech argues that if the court decides to grant defendants' motion, it

15  should stay the case and impose certain conditions on defendants, as previously proposed

16  in the motion to dismiss the original complaint.

17      The motion is GRANTED.  On balance, both the private-interest and the public-

18  interest factors favor dismissing this case so that it can be brought in China.  With regard to

19  the private-interest factors, the court notes that the plaintiff's choice of forum is given little

20  weight when the plaintiff is a foreign entity.  See Piper Aircraft v. Reyno, 454 U.S. 235, __

21  (1981); Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430; Lueck,

22  236 F.3d at 1145.

23      The factor of relative ease of access to sources of proof favors China.  NibiruTech's

24  claims are based on allegations regarding the "fictitious" invoices prepared by HJClan.

25  However, to the extent that Andrew Jang was involved in the preparation of fictitious

26  invoices, that involvement occurred in China.  Moreover, Jang asserts that the preparation

27  of fictitious invoices was standard operating procedure at NibiruTech; that even the

28  invoices prepared by HJClan were subject to approval by, and followed a format prescribed

United States District Court

For the Northern District of California

by, NibiruTech's finance department; that numerous NibiruTech employees in China were involved in or were aware of this practice; and that most of the relevant information regarding invoices and financial records is in NibiruTech's possession in China – e.g., sales and marketing contracts, vendor reports and contracts, invoices and supporting emails, marketing reports and documents, bank and other financial documents, and revenue and income reports.

As for witnesses, NibiruTech has identified only the Jangs (who have agreed to appear in China) and the "mysterious" Shipp and Shobeiri, whom defendants contend were not HJClan employees or extensively involved with HJClan, and about whom NibiruTech appears to have little if any knowledge.  For their part, defendants have identified ten current or former NibiruTech employees with knowledge of NibiruTech's operations, nine of whom speak no English or limited English.  NibiruTech cannot be compelled to produce the former employees or the lower-level current employees here, and thus, defendants would likely be deprived of the opportunity to put on a defense.  While video depositions could presumably be taken in China (assuming defendants can locate the witnesses), it would be costly, and those witnesses would not be available for trial.

As for "other practical problems that make trial of a case easy, expeditious and inexpensive," the necessity of having testimony and documents translated by qualified translators would add significantly to the cost, likely duration, and complexity of litigating the case here.  Moreover, the court notes that even during the early stages of this litigation, the parties have several times raised concerns with regard to whether the translation of particular documents is accurate.

With regard to the public-interest factors, there is only a slight connection between the parties' dispute and California, as Andrew Jang was employed in China by a Chinese company at the time of the events that gave rise to the lawsuit.  It is true that HJClan, the entity to whom NibiruTech claims the funds were diverted, is a California corporation, and its "president," Maggie Chang, is a California resident.  However, according to NibiruTech, the alleged fraud was masterminded by Andrew Jang while he was employed in China.

1   Thus, there is minimal, if any, local (California) interest in this case.

2       The Chinese courts would have a significantly greater interest in resolving such a

3   dispute, as well as examining the issue of the parties' admitted creation of fictitious

4   business documents to evade Chinese currency restrictions (which defendants contend

5   does not involve California).  In addition, the burden on California courts and juries would

6   be greater than the burden on the Chinese courts, since qualified interpreters would be

7   required for most aspects of the case in California, and a Chinese court would be more

8   competent to hear NibiruTech's claims because of its familiarity with Chinese language and

9   Chinese law.

10      The additional conditions that NibiruTech proposes be imposed on defendants

11  include requiring defendants to agree to comply with discovery and "evidence submission"

12  orders of the Chinese court; to make past and present employees of HJClan available to

13  testify in the Chinese court at defendants' cost; and to make documents in defendants'

14  possession in the United States available for inspection in China, at defendants' expense.

15  NibiruTech also requests that the court order that the statute of limitations be tolled for the

16  time the case is pending in the Chinese court; that depositions in the United States proceed

17  under California Code of Civil Procedure § 2029; and that defendants pay any final

18  judgments rendered in the Chinese actions.

19      This court has no authority with regard to how the case proceeds in China.  Thus,

20  the court will not impose conditions regarding discovery and evidence, testimony of

21  witnesses, depositions, or production of documents in the Chinese court.  As for making

22  past and present employees available to testify in the Chinese court, HJClan has no control

23  over any past employees and would have no way of making them available, and outside of

24  a pending legal action, the court would have no authority to issue such an order.  As for

25  requiring that defendants agree to pay any final judgments rendered in the Chinese action,

26  that also lies outside this court's jurisdiction.  NibiruTech may find it necessary to file a

27  separate action seeking enforcement of any judgment.

28      The court agrees that the statute of limitations should be tolled for some reasonable

United States District Court
For the Northern District of California

period of time while the case is pending in China.  It appears that both sides may be

attempting to manipulate the system.  It is possible, as alleged by defendants, that

NibiruTech created fictitious invoices to avoid Chinese governmental regulations or

restrictions on transfer of funds, in which case NibiruTech might not be eager to file another

action in China.  Alternatively, it may be true, as NibiruTech claims, that the Jangs have

embezzled funds from NibiruTech, and are thus unlikely to actually appear to defend

against any civil action brought against them in China (or against any criminal action for

that matter).  If defendants do fail to appear in the Chinese action (notwithstanding having

agreed to do so), that would establish the lack of an available alternative forum, and the

court would permit NibiruTech to refile the case here.

Accordingly, the running of the limitations period will be tolled for four years from the

date of the dismissal of this action.  However, if no action is filed in China within six months

from the date of this order, the limitation period will not be tolled.

**IT IS SO ORDERED.**

Dated:  February 23, 2015

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California

13